IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| GERALD PEARSON,<br><br>    Plaintiff,<br><br>v.<br><br>BALTIMORE COUNTY DETENTION CENTER, et al.,<br><br>    Defendants. | Civil Action No.:  PX-22-0158 |

**MEMORANDUM OPINION**

Pending in this civil rights action is the motion to dismiss filed by Defendants Baltimore County Detention Center, Sergeant Paige, and Correctional Officer N. Yangou.  ECF No. 16. Although the Court notified Plaintiff of his right to oppose the motion, he has not responded and the time to do so has long passed.  ECF No. 17.  The Court finds no need for a hearing.  *See* Local Rule 105.6 (D. Md. 2021).  For the following reasons, the motion will be granted.

**I.    Background**

On December 18, 2021, at the Baltimore City Detention Center where Plaintiff Gerald Pearson was held, Defendant Officer Yangou and another corrections officer stopped medication and meal distribution on his tier because another detainee had stepped out of his cell and refused to lock in.  *Id*. at 3.  The officers left the housing unit without distributing food or medication.  *Id*.

An hour later, Officer Yangou returned to the housing unit and began to pass out meals. The detainee who had refused to lock-in still remained outside the cell and was watching television on a lower tier.  *Id*.  When Yangou came to Pearson's cell, Pearson "attempted to step out to shine confidential light on my medical situation when [he] was thrown by elbow to chest into a steel and

cement wall three times, the third strike causing the steel door knob to stab into my lower back." *Id*. at 3.  Sergeant Paige saw the altercation and had Pearson to come to the lower tier.  *Id.*  Pearson told Paige that he needed his blood pressure medication. *Id*. at 5.

Pearson complained about this incident, and ever since has been subjected to false "write ups," interference with his commissary, and delayed medical treatment; his mail has also been returned or rejected.  *Id*. at 5.  Pearson suspects that is the victim of discrimination because "the only difference between me and other inmate" who was allowed out of the cell "was [his] religious head covering." *Id*.

## II. Standard of Review

When reviewing a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts the well-pleaded allegations as true and in a light most favorable to the plaintiff.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "However, conclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'"  *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555.  "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'"  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

Although pro se pleadings are construed generously to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim.  *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).  "A court considering a motion to dismiss can choose to begin by

2

identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009).

## III. Discussion

Pearson, a pretrial detainee, enjoys the same constitutional protections as prisoners. *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983) (holding that the Due Process Clause of the Fourteenth Amendment applies to an individual's claims where no formal adjudication of guilt has occurred); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992) (analyzing plaintiff's claim under the Due Process Clause of the Fourteenth Amendment where the plaintiff was a pretrial detainee and not a convicted prisoner at the time of the alleged incident). Pearson first appears to allege an equal protection violation stemming from the perceived disparate treatment based on his religious beliefs. The Equal Protection Clause of the Fourteenth Amendment directs the States to treat similarly situated people alike. *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To make plausible such a claim, a detainee must aver facts that show (1) he was treated differently than similarly situated detainees and (2) "the unequal treatment was the result of intentional or purposeful discrimination." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). If this showing is plausible, the Court must next determine whether the disparate treatment alleged "can be justified under the requisite level of scrutiny.'" *Id.* at 730-31 (quoting *Morrison*, 239 F.3d at 654). In the confinement context, "officials are afforded the necessary discretion to operate their facilities in a safe and secure manner," and so the Court must assess "whether the disparate treatment is 'reasonably related to [any] legitimate penological interests.'" *Id.* at 731 (quoting *Morrison*, 239 F.3d at 654-55).

3

Viewing the Complaint most charitably to Pearson, no facts support that he was treated differently than a similarly situated detainee. At best, the Complaint avers that two detainees at two different times attempted to leave the cell during meal distribution. One was successful and one was not. But nothing makes plausible that Pearson and the other detainee were sufficiently similarly situated such that the different treatment gives rise to an equal protection claim. Other than the Complaint's cursory reference to differences in religious head covering, the Complaint affords no other detail by which two compare the two.

Alternatively, even if the Court assumes the two were similarly situated, no facts make plausible that the purported unequal treatment was fueled by discriminatory animus. Although the Complaint notes that one man was wearing the religious head covering, it says nothing about why the defendant officers behaved as they did. Accordingly, because the claim is too barebones to survive challenge, it must be dismissed.

Next, to the extent Pearson intends to bring an excessive force claim based on the officer's blow to his chest, this claim also is too factually thin to survive challenge. When evaluating an excessive force claim, courts must inquire whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Thus, in this context, some facts must make plausible that "the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). The Court considers "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id*. at 397; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Although the Complaint avers that Officer Yangou's blows took Pearson by surprise and were forceful, nothing else makes plausible they were excessive. Indeed, the Complaint concedes that Pearson had tried to leave his cell without permission. Yagou, the only correction officer in a tight space, needed to control the situation. Accordingly absent more, an alleged blow to stop Pearson from leaving the cell cannot make plausible an excessive force claim.

The Complaint also asserts that Pearson had been denied constitutionally adequate medical care. The Court assesses the sufficiency of the claim and one brought under the Eighth Amendment prohibition against cruel and unusual punishment. *Hill*, 979 F.2d at 991-92. "[P]rison officials violate detainee's rights to due process when they are deliberately indifferent to serious medical needs." *Id. See also Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) ("[D]eliberate indifference to the serious medical needs of a pretrial detainee violates the due process clause.").

No averred facts support this claim. Nowhere does the Complaint make mention that Pearson had requested medical care apart from his stating to Sergeant Paige that he needed his blood pressure medication. This alone does not demonstrate that Pearson was suffering from a serious medical need for which Defendant officers knowingly or recklessly failed to address. Accordingly, this claim, too, must be dismissed.

As to the remaining retaliation allegation – that Pearson has been the target of other adverse action since he complained about this incident – the Complaint, once again, is too bare bones to raise a right to relief above the speculative level. The Complaint does not specify which officers deprived him of any specific services and under what conditions. Because generalized claims of "retaliation" do not suffice, the claim fails as a matter of law.

5

## IV. Conclusion

The Complaint fails to state a claim upon which relief may be granted. Thus, Defendants' Motion to Dismiss shall be granted. A separate Order follows.

| | |
|---|---|
| 8/23/23 | /S/ |
| Date | Paula Xinis<br>United States District Judge |